81 F.3d 173
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Augie SUNAGEL, Plaintiff-Appellant,
v.
GREEN MOUNTAIN WATER AND SANITATION DISTRICT; Alan D.
Churchill, individually and as member of the Board of
Directors; L. Scott Tucker, individually and as member of
the Board of Directors; Kenneth J. Kronenberger,
individually and as member of the Board of Directors; Lloyd
Corson, individually and as member of the Board of
Directors; Wanda J. Carlson, individually and as member of
the Board of Directors. Defendants-Appellees.
 No. 95-1098.
 United States Court of Appeals, Tenth Circuit.
 April 8, 1996.
 
 ORDER AND JUDGMENT[1]
 Before BRORBY and SETH,[2] Circuit Judges, and BRIMMER,*** District Judge.
 SETH, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff-appellant Augie W. Sunagel appeals the district court's summary judgment on his claim that he was constructively discharged in retaliation for exercising his First Amendment rights. We affirm.
 
 
 3
 In the summer of 1992, the president of the Board of Directors of the Green Mountain Water and Sanitation District, Alan Churchill, discovered that district employees, including Mr. Sunagel, had sold district property as scrap metal and had kept the proceeds. Instead of terminating these employees, the Board negotiated a restitution agreement under which the employees would reimburse the district for the stolen funds. In August 1992, the Board discovered that the employees had lied about the amount of money they had received from the sales. No additional discipline was taken, but the amount of restitution owed by the employees was increased to reflect the new information. On October 22, 1992, Mr. Sunagel signed an agreement to reimburse $933.00 to the district over an eight-month period.
 
 
 4
 Just before signing the agreement, on October 9, 1992, Mr. Sunagel wrote a letter to the Board demanding Churchill's resignation, as follows:
 
 Board of Directors:
 
 5
 In the best interest of the Green Mountain Water and Sanitation District, the District employees, and customers, I hereby demand the immediate resignation of Alan Churchill, President, Board of Directors.
 
 
 6
 Mr. Churchill, by employing tactics such as harassment, deception, and favoritism has knowingly created a work place environment of unbearable stress.
 
 
 7
 In addition, during Mr. Churchill's term as board president, district funds, property and facilities have been unethically if not unlawfully allocated.
 
 
 8
 I find Mr. Churchill's behavior unacceptable and is in violation of the code of ethics defined for his position.
 
 
 9
 As a result of the aforementioned behavior of Mr. Churchill, my personal health both physical and emotional has suffered immeasurably.
 
 
 10
 In closing it is my genuine desire to settle these concerns as peacefully and quickly as possible; however I will accept nothing less than the immediate resignation of Alan Churchill.
 
 
 11
 Sincerely,
 
 Augie Sunagel
 
 12
 Defendant's Supp.App. at 88. The Board responded by admonishing Mr. Sunagel for his insubordination in making unfounded accusations, and noting that the letter provided grounds for dismissing Sunagel immediately, especially in light of his recent involvement in the scrap metal theft. Id. at 89. The Board offered Mr. Sunagel the choice of appearing at the next meeting to apologize for his "indiscreet actions" and to inform the Board that he could continue to work for the district without ill feelings towards employees and Board members, or being terminated. Id. Mr. Sunagel resigned the day before the board meeting.
 
 
 13
 Claiming he was constructively discharged for exercising his First Amendment rights, Mr. Sunagel brought this action in the United States District Court for the District of Colorado. The district court granted summary judgment in favor of defendants on the ground that Mr. Sunagel failed to show that his employer rendered his work environment so intolerable that a reasonable person would have felt compelled to resign. This appeal followed.
 
 
 14
 We review a grant of summary judgment de novo, applying the same standards as those used by the district court. Pride v. Does, 997 F.2d 712, 716 (10th Cir.1993). Summary judgment is appropriate when "the pleadings ... [and] affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We view the record in the light most favorable to the party opposing the motion. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991).
 
 
 15
 Constructive discharge occurs when an employer makes the employee's working conditions so intolerable that a reasonable person in the employee's position would feel compelled to resign. Derr v. Gulf Oil Corp., 796 F.2d 340, 344 (10th Cir.1986). In light of the Board's extraordinary efforts to retain Mr. Sunagel as a district employee, we agree with the district court that a reasonable person would not view his conditions as intolerable and would not feel compelled to resign. Aside from being required to reimburse the district, Mr. Sunagel was not disciplined after the Board discovered that he had converted district property or that he had been dishonest as to the amount owed. Even after receiving the letter, which contained no actual allegations of wrongdoing but simply "demanded" Churchill's resignation, the Board expressed its willingness to continue to work with Mr. Sunagel if he apologized for the manner in which he expressed his grievances. The Board's openness to the district employees during the theft investigation would lead a reasonable person to conclude that the Board would be equally as approachable had there been actual evidence of misconduct by Churchill. Mr. Sunagel has not presented evidence of objectively intolerable working conditions sufficient to raise a genuine issue of fact.
 
 
 16
 Even if we viewed the Board's choice of apologizing or being terminated as a constructive discharge, however, summary judgment was proper because, as a matter of law, Mr. Sunagel's letter did not constitute speech on a matter of public concern. The First Amendment protects from discipline only those employees who speak on matters of public concern, as opposed to matters of personal interest. See Connick v. Myers, 461 U.S. 138, 147 (1983). In making this determination, we look to "the content, form, and context of a given statement, as revealed by the whole record." Id. at 147-48.
 
 
 17
 Here, Mr. Sunagel was being disciplined for a theft discovered by Churchill when he wrote the letter. The letter did not disclose any actual wrongdoing by Churchill, simply vague allegations of inequities and unethical behavior. Further, it was written as a personal demand for Churchill's resignation based on injuries suffered by Mr. Sunagel personally. We conclude Mr. Sunagel's letter was not calculated to disclose misconduct, but instead, was simply an extension of his personal dispute with the Board. See McEvoy v. Shoemaker, 882 F.2d 463, 466 (10th Cir.1989)("Given the entirety of [the employee's] letter, we are convinced that his principal purpose in writing it was not to disclose 'malfeasance on the part of government officials in the conduct of their official duties,' but instead to air his frustration at [workplace events].") (citation omitted). Thus, summary judgment was appropriate.
 
 
 18
 The judgment of the United States District Court for the District of Colorado is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 [2]
 Judge Seth died March 27, 1996. However, he had fully considered the matter and authored this order and judgment prior to his death
 
 
 ***
 Honorable Clarence A. Brimmer, District Judge, United States District Court for the District of Wyoming, sitting by designation